## GOVERNOR OF LOUISIANA *v.* THEODORE FAY.

Allowing and fixing the amount of bail are judicial acts, which the Executive is prohibited from doing by the second article of the Constitution.

The power to bail is not incidental to the power of granting reprieves.

So long as the opinion o the majority of the Court, in *The State* v. *Longworth*, prevails, a party convicted of a bailable offence, may be released by Habeas Corpus, after final judgment.

The rule, that in whatever manner a man binds himself he shall remain bound, may be true in mere conventional obligations, but in criminal cases no bonds are obligatory except those taken in pursuance of law.

APPEAL from the District Court, parish of St. Mary, *Voorhies, J.   E. Simon, jr.*, District Attorney, and *E. Simon*, for plaintiff.   *Tucker & McGill*, for defendant and appellant.

Plaintiff's counsel filed the following brief:

*Alexander Brette* was convicted of *manslaughter* in the parish of St. Mary, on the 4th of February, 1851, and on the 8th of the same month was sentenced to *seven years* imprisonment at hard labor in the penitentiary.   He took an appeal, which was carried before the Supreme Court, at its September term, 1851, at Opelousas, whereupon the judgment appealed from was affirmed.

It appears that after the rendition of the judgment of the appellate Court, but *before said judgment could be returned and recorded in the lower Court*, *Alexander Brette*, assisted by his friends, and especially by the defendant in this suit, (his father-in-law) took certain steps to procure, or rather to secure, a reprieve and respite from the Executive of the State, in view of a definitive pardon, with the advice and consent of the Senate; whereupon, on the 5th of December, 1851, the Governor issued his warrant, addressed to the Sheriff of the parish of St. Mary, notifying the latter of the granting of a reprieve or respite to *Brette, upon condition that he, Brette, should furnish his bond to the said Sheriff in the sum of $10,000, with Theodore Fay,* (the defendant) *as security ; the condition of the bond to be, that Brette should deliver himself up to the proper authority and comply with the terms of his sentence on the first day of March,* 1852, *or before, if required, should a full pardon be not granted to the said Brette, in conformity to law and the requirement of the Constitution.*   This could not be done, however, until the return and recording of the judgment of the Supreme Court in the ower Court for execution, and the *convict* kept the Governor's warrant in his possession until the first day of the term, when presenting himself in open court, he handed said warrant to the Sheriff.

On the 12th of January, 1852, (first day of the session of the District Court) the judgment of the Supreme Court was filed in the lower Court and ordered to be recorded and carried into execution, (see page 9) and on the next day (13th January,) the *convict* having presented himself in open court and placed himself in the custody of the Sheriff, it was ordered that the bond by him given for his appearance, and to abide by the decision of the Supreme Court (*Theodore Fay* was *Brette's* surety on that bond) be canceled and annulled. It appears that immediately after that proceeding the Governor's warrant was read in open Court; that the Sheriff observed to the Judge presiding, that *Brette* had presented to him a reprieve from the Governor, but that the Judge very properly answered that *the Court had nothing to do with it,*—that the matter was ended in the Court by whom the sentence had been pronounced. The convict was in the custody of the Sheriff, who, in compliance with the Governor's warrant, required him to execute the bond sued on, with the defendant as his surety, and *Brette*, after having furnished said bond, as contemplated in the warrant, was set at liberty.

The bond sued on was taken by the Sheriff strictly in conformity with the terms of the Governor's warrant, and stipulates the condition in the *very words* used by the Executive in granting the reprieve, and it must seem clear that the *defendant's name* was inserted in the warrant as being the surety who was to bind himself as such with the convict, in consequence of his having previously given his consent to becoming such surety; nay, of his having assisted his son-in-law in obtaining the respite in consideration of which the obligation sued on was contracted. The respite had its effect after the execution of the bond; the defendant had his eyes open when he signed it; he well knew its object; *he willingly consented to become bound as surety,* and it is indeed a strange position on his part to contend that the Governor of the State, from whom the reprieve or respite was obtained, and who had the constitutional power of granting it, had no authority to require and receive the bond without which the sentence of the law would have been carried into effect, and without which the convict would have been deprived of his liberty.

The action of the Senate was subsequently required by the Governor on the reprieve granted to *Alexander Brette*, but the pardon was refused by a very large majority; and on the 5th of February, after due communication made to the Governor by the Secretary of the Senate, official information thereof was given to the Sheriff of the parish of St. Mary, with instructions to take due notice thereof and to govern himself accordingly; this notification was accompanied with a letter of the Attorney General to the Sheriff, giving him his views on the subject, whereupon the latter, after diligent search for the convict within the limits of his parish, and due demand made of the defendant, as said convict's surety on the respite bond, come to the conclusion that *Brette* had either absconded or fled, to avoid the sentence of the law, and made his return to the Govenor accordingly.

This suit is brought to recover of the defendant the sum of *ten thousand dollars*, which is the amount of the bond or obligation by him voluntarily subscribed with *Alexander Brette*, a penitentiary convict, for the purpose of allowing the latter the enjoyment of his liberty, and the benefit of the constitutional right of giving bail to await the final action of the Senate on the reprieve granted by the Governor. This bond has had its effect, but the condition under which the obligation was contracted has not been complied with, and the undersigned contends that said defendant, as the surety of the absconding or fleeing convict, has become liable for the payment of the obligation sued on.

The defendant has filed an answer, which he calls his peremptory exception to plaintiff's demand, and which amounts to this: 1st, That the instrument sued on was taken in a case *not bailable.* 2d, That said instrument is a bond given for *an illegal and immoral consideration,* and one reprobated by law. And, 3d, That the Governor had *no power to require,* nor the Sheriff *to receive or accept* such an instrument as the one sued on—said instrument being not a bond or obligation known to or recognized by the laws of the State; and that the Sheriff had no power or authority, on receiving said instrument, to liberate the prisoner from his custody. Wherefore, he prays that the suit be dismissed and that the instrument or bond sued on be declared null and void.

On these pleadings, the Judge *a quo*, without disclosing any of the reasons upon which he may have based his judgment, but simply finding that the law

GOVERNOR OF LA. and evidence are in favor of the defendant, adopted the latter's conclusions, and
*v.* from that judgment the undersigned, representing the State, has appealed.
FAY.
 I. One of the exceptions set up is: *That the instrument sued on was taken in
a case not bailable.* ·I presume this exception will not be insisted on by the
defendant's counsel, but if it is, it will be sufficient to refer him to the decision of
·this Court in the case of *Ex parte Longworth,* 7 Ann. Rep. 6, based upon the
108th Art. of the Constitution, which provides that *"all persons shall be baila-
ble by sufficient sureties, unless for capital offences,"* &c. In that case, this
Court, after reviewing a great number of authorities applicable to the question
under consideration, seems to entertain the opinion, not only that the Constitu-
tion allows to a prisoner the right of being bailed *after conviction* during the
pendency of the appeal, but that the right extends also to a convict, the execu-
tion of whose sentence is suspended by the interposition of the Executive until
the action of the Senate on the reprieve or respite which he may have obtained.
"In England," says this Court, "a person improperly convicted was released
not by a new trial, but by the King's pardon, *and no doubt might be bailed un-
til the pardon could be obtained." A fortiori,* should he be bailed here, when
the benefit of a respite has been constitutionally allowed him by the Executive,
subject to the pardon being granted with the advice and consent of the Senate.
Under the Constitution, our Legislature cannot meet regularly but once every
two years; thus the convict would be obliged to wait sometimes two years be-
fore the action of the Senate could be had upon his reprieve. This was one of
the considerations operating upon this Court in the case of *Longworth,* for, as
therein expressed, the prisoner might be in bad health, and *might perhaps be
deprived by death of the Executive clemency, if detained in the parish prison
two years before he could enjoy it.*
 The bond or obligation sued on is anterior to the law of 1852. At the time it
was given, there was no legal restriction or impediment to the full exercise of
the right of being allowed to give bail, as provided for in the Constitution, and
the reprieve or respite once granted to *Brette,* it followed as a constitutional right,
that although convicted and sentenced, his bail by sufficient sureties could not
be refused; his offence had ceased to be a capital one; it had become *bailable,*
to wit: one for which the party had the right to avoid being detained in prison,
on giving the security required; and if so, as recognized by this Court in the
case of *Longworth,* it is clear that the right was properly exercised by the con-
vict, after the Sheriff was notified of the reprieve or respite granted by the
Governor.
 II. *That the instrument sued on is a bond given for an illegal and immoral
consideration, and one reprobated by law.* The defendant's counsel will hardly
insist upon this ground of his client's defence, and if he does, this Court will
say with me that it comes from the latter with very bad grace. What! the de-
fendant's obligation as surety of his son-in-law, then under the benefit of a
‚reprieve or respite granted by the Governor, that his said son-in-law, after en-
joying his full liberty during the suspension of his sentence, should deliver him-
self up to the proper authority and comply with the terms of his sentence,
*should a full pardon not be granted to him,* is one contracted for an immoral
consideration! What! the cause of the obligation, which was not only to
secure the presence of the convict after the action of the Senate and the ulti-
mate execution of the sentence, if the pardon was refused, but also to permit
*Brette* to enjoy his liberty, to avoid being detained in prison for several months
and to remain at home with his family, was an immoral one!! Is there any-
thing repugnant to morality in the cause and object of this contract? Surely
not: it was, on the contrary, not only moral, but very natural in the defendant
to lend his aid to *Brette,* who was a member of his family, and to afford him, by
contracting this obligation, the means of avoiding detention, and of obtaining a
full pardon from the competent authorities of the State. For aught it appears,
the defendant himself was instrumental in obtaining the Governor's reprieve;
his name had been proposed, perhaps by himself, as the convict's surety; it was
inserted in the Governor's warrant as such; and after having been *present in
the transaction* the obligation sued on was subscribed by defendant, with a full
knowledge of all the circumstances. There is clearly no more immorality or
illegality in defendant's contracting this obligation than there would be in any
one becoming the surety of any person either before or after conviction, under
the Art. 108 of the Constitution, and the offence being bailable, as I have
already shown, the consideration of the bond was one not reprobated by law.

III. This exception, to wit: *that the Governor had no power to require nor the Sheriff to receive or accept such an instrument as the one sued on*, has been strenuously urged in the Court below, where it has undoubtedly prevailed. It behooves me to show that the judgment appealed from is erroneous:—

By the 47th Art. of the Constitution, the power of granting reprieves for all offences against the State, *is vested in the Governor*. This power was exercised in the case of *Brette*, and from the moment the will of the Executive was made known officially to the Sheriff, the execution of the sentence of the law was necessarily suspended. The Sheriff was bound to obey the mandate or order of the Governor; he had no right to disregard it; and in complying with it, it is clear he could not be accused of acting in contempt of the authority of the Court by whom the warrant of execution of the sentence had been issued, as *all jurisdiction of said Court* over the case and over the prisoner *had ceased* from the moment said sentence was pronounced and ordered to be carried into effect. The Judge *a quo* was well aware that such was the position of his tribunal, when on being informed that *Brette* had presented to the Sheriff a warrant of reprieve from the Executive, he answered: *the court had nothing to do with it*. The Governor's warrant, issued in the exercise of the constitutional power of *granting reprieves*, is not a *Judicial proceeding;* it is, as expressed by the Judge *a quo*, foreign to the administration of justice, and out of the control of the Judiciary power; *Courts of Justice have nothing to do with it ;* but yet, under the Art. 108 of the Constitution, and the interpretation adopted by this Court, in the case of *Ex parte Longworth*, the convict had the right of being bailed by sufficient sureties; the sentence was suspended, but the prisoner was constitutionally entitled to be liberated; and the question presents itself: who was to require and receive his bond with sufficient sureties? and who was to Judge of the sufficiency of the security?

I contend that the ordering and taking of the bond in a case of reprieve, to arrest the ultimate action of the Senate, in view of a full pardon of a bailable offence, must be one of the incidental powers belonging to the Executive, in the exercise of the power conferred upon him by Art. 108 of the Constitution. How could it be otherwise? The obligation is not to be given in the course of Judicial proceedings; it is foreign to the administration of justice; no Court has any jurisdiction to require it; it is not provided for by the criminal laws; the convict does not bind himself to appear before any tribunal, but only to deliver himself up to the Sheriff who, in such cases, is merely an Executive officer. Should not the Executive, then, when the reprieve is to be followed by liberation, have the power and authority to fix the conditions and the amount of the obligation under which such liberation is to take place, and to delegate the receiving of such obligation to the Sheriff, who, in not executing the sentence, by order of the Governor, is clearly acting under the immediate control of the Executive? In the case of *Longworth*, who was admitted to bail by order of this Hon. Court, your Honors delegated the same power to the Sheriff who had the prisoner in his custody—and why? Because the jurisdiction of the inferior Court had ceased by the appeal, and because the inferior Judge could not, after his refusal to bail the convict, act any further in the taking of the bond. There is no law that gives the Sheriff the power of receiving a bail *in criminal proceedings*, and yet this Court, *ex necessitate*, and in the exercise of their appellate jurisdiction, delegated it to the Sheriff! Why should it not be so in the case of a reprieve, when the convict is no longer under the control and jurisdiction of the Court, and when his conditional release is to be the consequence only of the constitutional action of the Executive?

But, besides the questions presented by the defendant's exceptions, and whether or not the Executive acted properly and legally in requiring the obligation sued on to be given by the convict, I maintain that said defendant is bound by the terms of the obligation by him voluntarily contracted, and that said obligation, having had its effect as originally intended, he has no right to be released from it.

The obligation sued on is a civil one, (it is not one provided for by the criminal laws of the State, nor is it one taken in the course of criminal proceedings) it is in the nature of an obligation with a penal clause. C. C., Art. 2113. It contains two distinct contracts—one on the part of the convict, to deliver himself up to the Sheriff and to comply with the terms of his sentence, which is the principal object of the contract, and the other on the part of both obligors, to pay $10,000 as a penalty, if the principal object of the agreement is not car-

GOVERNOR OF LA.
*v.*
FAY.

ried into effect. C. C. 2114. The principal obligation here is independant of the penalty, though the latter depends upon the performance of the condition, that is to say: of the main object of the contract. C. C. 2115. It is stipulated to enforce (*pour assurer*) or rather to secure the performance of the principal obligation. C. C. 2116. And the nullity of the penalty does not involve that of the principal obligation. C. C. 2119. If there be a lawful excuse for its non performance, such as inevitable accident, (death, for instance,) or irresistible force, the penalty is not incurred. C. C. 2116.

Now, the main object of the contract was to secure the presence of the convict at a certain period to comply with the sentence, the execution of which was suspended; this was the principal obligation; and on his failing to do so, the obligors were to pay the penal amount stipulated in the bond; this is the penalty. The advantage to be derived from it, or in other words, the consideration was the release of *Brette* from imprisonment and the right of enjoying his liberty until the final action of the Senate on the pardon applied for. The proposition was made to the Governor sometime before the contract was executed (5th of December, 1851,) it was adhered to by all parties; the defendant's name was inserted in the warrant as being the surety; and when the convict placed himself in the custody of the Sheriff, on the return of the mandate of the Supreme Court to the lower tribunal, his former appeal bond, also subscribed by the defendant as his surety, was canceled and annulled, and in compliance with the requirements of the Executive in his official warrant, the obligation sued on was *willingly* executed on the same day by the defendant. *Volenti non fit injuria,* is a maxim fully applicable to this case; so in the case of *Bradford* v. *Skillman,* 6 N. S. 123, it was decided that the surety on a twelve months bond cannot be discharged from responsibility on the ground that the law by virtue of which the bond was given, is unconstitutional. The Court said: "The plaintiff *willingly* became *the bondsman* of a willing purchaser, and executed a bond, in the nature of a recognizance, on which he knew execution would issue *de plano.* It appears to us he cannot complain, *volenti non fit injuria.*" In the case of *Police Jury* v. *Sherburne,* 17 L. R. 345, it was decided that the sureties on a bond given by a Sheriff for the collection of the parish taxes, *cannot contest the legality* of the ordinances of the Police Jury making the assessment. By receiving the tax roll and executing the bond, the Sheriff and his sureties *recognized the authority* of the the Police Jury. It is too late to contest the validity of these ordinances after having acted under them. See also 3 R. R. 196. Here, again, *volenti non fit injuria,* the convict had the benefit of the effect of the bond, the obligors by executing the obligation, recognized the authority of the Governor; and it is now too late to contest the said authority, and to contend for the nullity of an obligation, under the shield of which, the time during which the prisoner was to enjoy his liberty, was permitted to run out, and the convict was enabled to make his escape, in defiance of the obligation he had contracted, and of the criminal laws of the State. In the case of *Longworth,* this Hon. Court was impressed with the truth and weight of the observations of the Attorney General, that the construction they were obliged to give to the Art. 108 of the Constitution might conflict with the best interest of society by enabling a wealthy criminal to escape justice by means of his property; here, it is worse; for the object of the defendant in endeavoring to avoid the responsibility he has incurred, is nothing more or less than an attempt to secure forever the impunity of a heinous crime, and to screen the convict's property from the reach of our criminal laws. Such, I hope, will not be the result of his endeavors.

It is a well known legal rule that when a man becomes the surety of a married woman in a contract in which she is not authorized by her husband, the nullity of the principal obligation will not release him, he shall be bound. The same rule also governs in the case of the surety of a minor; the latter may not be obligated by his contract, but the surety is bound. Why, then, should not the defendant be bound by the obligation sued on? He contracted it *willingly,* with his eyes open, with a full knowledge of all the circumstances; it matters not as to the form of his contract, whether it is called *a bond* or any other form, it contains an obligation, the nature and the object of which he was well aware of, and if it be true that every engagement entered into for a good and lawful consideration *is binding,* whatever be its form, (*Dunbar* v. *Owens,* 10 R. R. 140,) I feel confident the State will recover the amount sued for.

GOVERNOR OF LA.
v.
FAY.

Defendant's counsel filed the following brief:

This is an action brought by the State to recover from the defendant the sum of $10,000, the penalty of a bond signed by him as the security of one *Alexander Brette*, which was given under the following circumstances, as particularly detailed in the petition, to wit: On the 4th of February, 1851, in the District Court of the parish of St. Mary, *Brette* was convicted of the crime of manslaughter, and sentenced to seven years' imprisonment at hard labor in the Penitentiary, and to pay the costs of prosecution. He appealed to the Supreme Court, and during the pendency of the appeal went at large under a bail bond, taken by order of the District Court. The judgment was affirmed by the Supreme Court, and on the mandamus being read in the lower Court, and ordered to be executed, *Brette* appeared in open Court, and delivered himself into the custody of the Sheriff, whereupon his said bail bond was canceled of record.

The Sheriff had been notified of the reprieve of *Brette* by the Governor, by the following communication from the Executive Department, which was in his hands at the time *Brette* was in custody. As this communication forms a material part of the case, and is relied on by the State as vesting power in the Sheriff to take the bond and to liberate the prisoner, we give it at length in our brief:—

EXECUTIVE OFFICE, BATON ROUGE,
December 5, 1851.

*To the Sheriff of the parish of St. Mary :*

Whereas *Alexander Brette* was tried and convicted before the Fourteenth Judicial District Court, on the 4th of February, 1851, of the crime of manslaughter, and sentenced on the 8th of the same month to seven years' imprisonment at hard labor in the Penitentiary, with costs of prosecution:

Now, be it known that for good and sufficient reasons, I do hereby grant a reprieve or respite to the said *Alexander Brette*, until further consideration of his case, upon condition that the said *Alexander Brette* shall furnish bond and security to the Sheriff of the parish of St. Mary in the usual form, in the sum of $10,000, with *Theodore Fay*, of said parish, as security, the condition of which bond to be that the said *Alexander Brette* shall deliver himself up to the proper authority, and comply with the terms of his sentence, on the 1st day of March, 1852, or before, if required, should a full pardon be not granted to said *Alexander Brette*, in conformity to law and the requirements of the Constitution.

Given under my hand, and the seal of the State, &c.

{ L. S. }

By the Governor:
(Signed) JOSEPH WALKER.
CHARLES GAYARRE, Secretary of State.

Acting under the authority herein communicated, the Sheriff, on the 13th of January, 1852, took the bond which forms the subject of this suit, and liberated the prisoner, *Brette*, from his custody, who has ever since been at large.

The bond is in the usual form, made payable to the Governor, and in other respects conformable to the terms of the above communication.

The Senate refusing to concur in the pardon recommended by the Governor, the fact was officially notified to the Sheriff, whereupon he made an unsuccessful search for the body of *Brette*, and made return accordingly.

The defendant resisted the payment of the penalty of the bond on the following grounds, as set forth in his answer or peremptory exception to the plaintiff's action, that—

1st. The instrument sued on was taken in a case not bailable, and without any legal authority.

2d. The Sheriff had no power to receive the bond and liberate the prisoner, *Brette*, from custody, and in doing so he acted without authority and against the law.

3d. The mandate from the Governor to the Sheriff was unauthorized, and clothed him with no power to take the bond and liberate the prisoner.

4th. The said instrument was not a bond or obligation known to or recognised by the laws of this State, and could not be enforced against the principal or this defendant, his security.

5th. From the face of the instrument, as recited in the plaintiff's petition, it was given for an illegal and immoral consideration, one reprobated by law and in contravention of the same.

GOVERNOR OF LA.
*v.*
FAY.

6th. The Governor and Sheriff were alike without authority to demand or accept such an instrument as the one sued on, and the same is void.

Wherefore defendant prays that this suit be dismissed at plaintiff's cost, and the instrument or bond sued on be declared null and void, and for general relief, &c.

Upon this issue the case was tried on its merits, and judgment was rendered in conformity to the defendant's prayer, from which the State has appealed.

The validity of the bond, and the consequent right of the State to recover the penalty from the surety, depends mainly upon two questions:

1st. Whether the Sheriff, by virtue of the authorization of the Governor, or by virtue of any power vested in him by law, had authority to accept the bond and liberate the prisoner from his custody.

2d. If he had the requisite authority, then, whether the bond is not viciated by the illegality of the cause or consideration for which it was given.

I. It will scarcely be seriously contended by the counsel for the appellant that the Sheriff had any power to receive the bond, except what he derived from the mandate of the Governor. In the case of *Slocum et al.* v. *Robert* (16 L. R. 173) it was held that in case of judicial bonds taken by the Sheriff from persons in his custody, " he has no power to take any other bond but that which he is authorized by law to take." That was a bond taken in a civil proceeding, where the prisoner was in the custody of the Sheriff under a writ of arrest, and taken under article 224 of the Code of Practice. And all the cases wherein the Sheriff is authorized to take a bond from persons in his custody are civil cases, the law prescribing the conditions of the bond, and the Judge fixing the amount of the penalty, so that what is done by the Sheriff is merely ministerial. In criminal cases, however, he has no power to take any bond except as ordained by the Judge. (*State* v. *Jones*, 3 An. 10 ; *State* v. *Lougeneau*, 6 An., 700 ; *State* v. *Nyatt et al.*, 6 An., 701.)

But has the *Governor* the power to take the bond, or to authorize the Sheriff to take it? We say he has not. If he has such power, it must be derived from one of these three sources—first, from the express terms of the Constitution or the statutes of the State; second, by necessary implication, in order to exercise some power expressly granted, or third, it must result from the nature of his office.

There is no statute granting this power, or in any way relating to it. The articles of the Constitution defining the powers and duties of the Governor do not touch it. Article 33 vests in him the "supreme executive authority of the State." By Article 55 it is made his duty " to take care that the laws be faithfully executed." Article 47 gives him power to grant reprieves for all offences against the State, and except in cases of impeachment, with the consent of the Senate, to grant pardons and remit fines and forfeitures after convictions." There is certainly no such power expressly granted in any of these articles, or in any other in the Constitution.

But the power to let to bail is claimed to be necessary in order to exercise the reprieving or pardoning power granted by Article 47. This necessity, we suppose, (to have any effect) must be a legal necessity—such as would render nugatory the power to reprieve or to pardon, without exercising the power to bail, which, in that case, would be properly considered as a latent or implied power. But does any such necessity exist? Cannot the convict whom the Governor thinks proper to reprieve and pardon, remain in the custody of the Sheriff, or in the parish prison, until the action of the Senate can be had, as well as go at large? . True, it would be less for his comfort and convenience, but the comfort or convenience of the prisoner cannot amount to a legal necessity for the exercise of a power not expressly granted. Nor is the question to be effected by the right of bail secured to the prisoner by Article 108 of the Constitution, as interpreted by this Court in the late case of *Ex parte Longworth*, 7 An.

That case, while it maintains the right of the prisoner to be bailed, even after conviction, does not intimate that the bail is to be granted by the Governor, but it clearly shows that that power is to be exercised by the Judge. If there was a legal necessity for bailing the prisoner, or if he had a constitutional right to be bailed during the pendency of his pardon before the Senate, the bail should have been granted by the Judicial, and not the Executive authority, upon the presentation of the reprieve under the signature of the Governor and the seal of the State. This would be in conformity, as near as the difference of circum-

stances would permit, with the mode of taking advantage of the King's pardon in England, which is, "to procure the King's sign manual or privy seal, signifying his Majesty's intention to afford a pardon to the prisoner, either absolutely or conditionally as the case may be, and directing the justices of the goal-delivery to bail him, on his entering into a recognizance to appear and plead the next general pardon that shall come out. This mandate the justices obey, taking security, if the pardon is conditional, for the performance of the stipulation upon which it is granted, and afterwards issuing their warrant to the goalor for his discharge." (4 Hawkin's P. C., 361.)

It is in conformity to the principles of the English law, as well as of our own, that the bail be granted and the bond received by a judicial, and not a ministerial officer. The King does not grant the bail himself, nor issue his mandate to that effect to the Sheriff of the shire, but to the justices of the goal-delivery.

But, lastly, does the right of the Executive to let to bail in such cases result from the nature of the Executive office? So far from it, the granting of bail is quite incompatible with the duties of the Governor, as prescribed and limited by the Constitution.

Article 1 of the Constitution divides the government of the State into three departments—the Legislative, the Executive and the Judicial. Article 2 provides that "*no one of these departments, nor any person holding office in one of them, shall exercise power properly belonging to either of the others,* except in the instances hereinafter expressly directed or permitted." Article 62 vests the Judicial power in the Supreme Court, in District Courts, and in Justices of the Peace. Hence it is clear that the Governor cannot do any judicial act. But it has been decided by this Court, in the case of *The State of Louisiana* v. *Jones,* (3 An. 10) that "*the granting of bail and determining the amount in which the parties shall be bound, are judicial acts.*" The duties and powers of the Governor, as well as of the Sheriff, are purely ministerial. The granting of bail by the Governor, in the case at bar, was exercising power *properly belonging to the Judiciary,* and was, therefore, in direct violation of the prohibition contained in Article 2 of the Constitution.

The proposition, then, appears to be clear, that there was no authority whatever, either in the Governor or the Sheriff, to take the bond; but that they were, on the contrary, forbidden by Article 2 of the Constitution to do so. The case, then, does not differ from the case where a Justice of the Peace or a Parish Judge assumes to take a bond without authority, except that the case at bar is much stronger against the pretensions of the State, this bond having been taken without any color of judicial authority. But it has often been held by this Court that "*a bail bond taken by a magistrate, in a case in which he is prohibited by law from admitting the party to bail, is void, and the State cannot recover on it.*" (*State* v. *Herbert,* 10 R. R. 41 ; *State* v. *Jones,* 3 An., 10 ; *State* v. *Harper,* 3 An., 598 ; *State* v. *Hays,* 4 An., 59.) Whatever is done in contravention of a prohibitory law is void. (C. C. 12.)

II. But supposing there was the necessary authority in the officers who let the prisoner (*Brette*) to bail, is not the bond viciated by the cause or consideration for which it was given? We think it is.

The governor grants a reprieve or respite to the prisoner upon the express "condition that he shall furnish bond and security to the Sheriff of St. Mary, in the usual form, in the sum of $10,000, with *Theodore Fay,* of said parish, as security." The giving of the bond, then, was the price paid by the prisoner for the reprieve or respite granted by the Governor, and for the privilege of going at large. The Governor had the discretionary power to grant the reprieve or not, according as he might judge of the merits of the application ; but we submit that he had no right to append any such condition to the exercise of that power. It amounts in effect to a commutation of the sentence from imprisonment for seven years in the Penitentiary to the payment of $10,000 fine—an arrangement which, however good as a financial operation on the part of the State, but illy comports with a just regard for public morals, or with the Constitutional power of the Executive. The power to grant a reprieve or pardon does not imply a power to commute a sentence of imprisonment to the payment of a sum of money. If it did, it might be no difficult matter for the rich to "buy out the law," and thus to "go unwhipped of justice." If it had been designed to lodge such power in the Executive, it would have been expressed in the Constitution, and the price of every reprieve or pardon should have been fixed by a regular fee bill. If the State should be permitted to recover in this

GOVERNOR OF LA. action, it might in truth be said that *Brette* had bought his liberty at the price
*v.*
FAY.  of $10,000, and the State has received the money !

III. This leads us to consider a point relied on by the counsel for the State,
to wit: that although the bond may have been taken without authority, yet it
is good as a voluntary obligation; in other words, that the bargain entered into
between the prisoner (*Brette*) and *Fay*, his security, on the one part, and his
Excellency, the Governor on the other part, by which the former undertook and
agreed to pay, in a certain contingency, the sum of $10,000, in consideration
that the latter should grant *Brette* a reprieve, and permit him to go at large, is
good and binding on the security, as a voluntary obligation, although the Go-
vernor had no legal power to contract in the premises. It is a sufficient answer
to this proposition that this Court has held in numerous cases that " a bail bond
taken by a magistrate without authority, is void, and the State cannot recover
on it." (See cases above cited.) This bond lacks one of the essential elements
of a valid agreement, to wit: "*parties legally capable of contracting.*" (C. C.
1772.) Without legal authority to receive the bond, the Governor had no legal
capacity to bind the other parties. The maxim invoked in the Court below by
the counsel for the State, that " in whatsoever manner a man binds himself, he
shall remain bound," it was decided by Judge Martin, is not true in "judicial
bonds taken by the Sheriff from persons in his custody." (*Slocum et al.* v.
*Robert*, 16 L. R., 173.) The fact that *Brette* has enjoyed the benefit of the
bond and escaped the walls of the prison can not cure the defect of authority.
It was a dereliction of duty in the public officer in granting him his liberty, for
which, doubtless, he would be punishable under the common law, as for an
escape. (3 Hawkins's P. C., 254 and 157.) But the validity of the bond is to
be tested by well established principles of law, which are not to be affected by
any accidental advantage or disadvantage that may have accrued to any of the
parties concerned. Public officers must act under authority of law, in order to
give validity and binding effect to their acts, especially in criminal proceedings;
and as there is no color of authority for receiving the bond in the case at bar,
we trust the Supreme Court will find no difficulty in affirming the judgment of
the Court below.

ROST, J. There is no error in the judgment in this case. The allowing of
bail and the determination of the amount in which the parties are to be bound,
are judicial acts which the Executive is prohibited from doing by the second
Article of the Constitution of the State. The power to bail is not incidental to
the power to grant a reprieve. See *State* v. *Jones*, 3 An., page 10.

The argument that the Court is wholly divested of jurisdiction after a final
judgment, is inapplicable to a case of bail, so long as the opinion of the majority
of the Court in the case of *The State* v. *Longworth* prevails. The party enti-
tled to be bailed may be relieved by habeas corpus. See 7th An., page 247.

It is said that the defendant, *Fay*, signed the bond with his eyes open, and
the rule "*volenti non' fit injuria*," has been earnestly pressed upon us. This
was a favorite maxim of the late Judge Martin, but he took care to limit its ap-
plication to civil cases. In the case of *Slocum et al.* v. *Robert*, which was that
of a bail bond, he remarked : " It has been urged that we have often said, that
in whatever manner a man binds himself he shall remain bound. This may be
true in mere conventional obligations, but not in judicial bonds, taken by the
Sheriff from persons in his custody; in such a case the Sheriff has no power to
take any other bond but that which he is authorized by law to take." 16th
La., 174.

We take this to be sound doctrine, at least in criminal cases, and as no law
authorized the Sheriff to take the bond sued upon, no recovery can be had
upon it.

The judgment is affirmed, with costs.